## AFFIDAVIT OF SPECIAL AGENT TIMOTHY R. KENNY

I, Special Agent Timothy R. Kenny, being sworn, depose and state as follows in support of my application for a complaint charging that, on or about January 25, 2023, in the District of Massachusetts, Giovanni PINA, a/k/a "Gio," possessed with intent to distribute and distributed controlled substances, specifically, methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) (the "Target Offense").

## INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2014. For much of that time, I have been engaged in gang and drug investigations. I am currently assigned to the FBI's Boston Office. Based on my training and experience as a Special Agent, I am familiar with federal narcotics, firearm, and money laundering laws. In this regard, I know that it is a violation of 21 U.S.C. § 841(a)(1) to possess with intent to distribute, distribute, and/or to conspire to possess with intent to distribute or distribute controlled substances, including cocaine and methamphetamine.

2. Since becoming a Special Agent with the FBI, I have participated in investigations of narcotics trafficking and money laundering, and among other things, have conducted or participated in physical surveillance, the execution of search warrants, debriefings of subjects, witnesses, and informants, and participated in consensually recorded conversations and meetings. Through my training, education, and experience, I am familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs.

3. I have written and/or participated in the execution of numerous search warrants resulting in the seizures of large quantities of controlled substances, packing implements, other paraphernalia involved in the manufacture and distribution of controlled substances, large amounts of United States currency, ledger books, bank records, telephone books, receipts, drug customer lists, and other documents relating to the manufacturing, transportation, ordering, purchasing, and distribution of controlled substances. I have participated in the debriefing of defendants, informants, and witnesses who had personal knowledge regarding large-scale drug trafficking organizations. I have participated in all aspects of drug investigations including conducting surveillance, executing searches pursuant to court-ordered search warrants, and conducting arrests. As a result of my assignments, I have received extensive specialized training in the field of narcotics identification, investigation, and enforcement.

4. Based upon my training and experience, I am familiar with the methods of operation employed by narcotics traffickers operating at the local, state, national, and international levels, including those involving the distribution, storage, and transportation of narcotics and the collection of monies that constitute the proceeds of narcotics trafficking activities. I am aware that drug traffickers commonly use cellular telephones in furtherance of their drug trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that narcotics traffickers speak in vague, guarded, or coded language when discussing their illegal activities, use text messages in lieu of phone calls to avoid speaking over the telephone, and employ a variety of counter-surveillance techniques to detect if their vehicles are being followed by law enforcement.

5. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from

confidential informants/cooperating witnesses, public records, database checks, Snapchat search warrant returns, mobile phone location information, GPS tracker location information, and other investigations. The word "agent" or "investigator" is used in this affidavit for all federal, state, and local law enforcement officers. The dates and times in this affidavit are approximate. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of an arrest warrant charging Giovanni PINA ("PINA") (born 1997), a/k/a "Gio," with Possession with Intent to Distribute and Distribution of Controlled Substances, namely, methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841, i.e., the Target Offense.

6.      Because this affidavit is submitted for the limited purpose of supporting the issuance of an arrest warrant for PINA, I have not presented every fact learned during the investigation or recounted every investigative technique employed. Rather, I am only setting forth information necessary to fully support probable cause for the issuance of a complaint.

## BACKGROUND

7.      Since at least January 2021, the FBI Metro Boston Gang Task Force ("MBGTF") has been investigating a group of individuals suspected in a variety of firearms and controlled substances violations within the Brockton area of Massachusetts and elsewhere. The investigation has consisted of various investigative techniques, including (but not limited to) physical surveillance, witness interviews, search warrants, the seizures of controlled substances and firearms, arrests, and controlled purchases, including at least one controlled purchase of methamphetamine pills from PINA.

8.      During the investigation, I have learned about the membership and criminal activities of a Brockton-based DTO. The investigation has revealed that the DTO distributes cocaine, crack cocaine, fentanyl, methamphetamine, and other controlled substances throughout

3

Brockton and other areas within the District of Massachusetts. It has also revealed that DTO members may possess firearms and/or ammunition to protect themselves and the organization's stash houses (where members store controlled substances and drug trafficking proceeds). The investigation has shown that PINA is involved in trafficking controlled substances, including methamphetamine, in conjunction with other DTO members.

A. **Investigation Shows PINA Connected to Drug Trafficking**

1. **CW-1 Identifies PINA as a Drug Trafficker**

9. In June 2022, a Cooperating Witness ("CW-1")[1] provided information that "Gio" sells methamphetamine pills, fentanyl pills, and cocaine in the Brockton area of Massachusetts. CW-1 subsequently connected with PINA via written messages over Instagram and provided PINA with CW-1's phone number. CW-1 and PINA subsequently communicated (including on FaceTime) via CW-1's phone number and PINA's phone number, 603-851-8258 ("the PINA Phone 8258").

10. During law enforcement's investigation, an investigator conducted a photo array procedure with CW-1. The investigator read an "Eyewitness Advisement" form to CW-1. CW-1 acknowledged understanding the form. The investigator, who was unfamiliar with PINA's appearance, handed CW-1 nine photographs of male subjects. The photographs were marked one through nine. CW-1 held photograph five and told the investigator that the individual in

---

[1] CW-1 has been cooperating with law enforcement since approximately May 2022. CW-1 is cooperating with law enforcement for sentencing consideration on a potential drug trafficking charge. CW-1 has provided information about PINA and his co-conspirators, including their methods of distribution, telephone numbers used to facilitate distribution, and locations used to facilitate drug trafficking activity.
  CW-1 has a criminal history including convictions for drug distribution offenses, firearm offenses, motor vehicles offenses, and violent offenses.
  The information that CW-1 provided has been corroborated through other investigative means, including search warrants, surveillance, and seizures of evidence, and I consider the information provided by CW-1 to be reliable. CW-1 is willing to testify in this investigation.

photograph five was "GIO." CW-1 stated that s/he was "100%" sure of the identification. The male subject in photograph five was PINA.

### 2. CW-1 Conducted a Controlled Purchase of Methamphetamine Pills from PINA in January 2023

11. On January 24, 2023, investigators directed CW-1 to contact PINA and set up a controlled purchase of methamphetamine pills from PINA. That afternoon, CW-1 FaceTime called PINA at the PINA Phone 8258. PINA did not answer. Soon thereafter, PINA used the PINA Phone 8258 to FaceTime call CW-1. This call was not recorded. Investigators debriefed CW-1 following the call. During the call, CW-1 asked PINA to sell CW-1 a specific amount of methamphetamine pills. PINA asked CW-1 to purchase a larger amount of pills instead. CW-1 agreed. PINA asked CW-1 if PINA could deliver the drugs to CW-1 that same day. CW-1 told PINA s/he would get back to PINA. At the direction of investigators, CW-1 did not have additional contact with PINA on January 24.

12. On January 25, 2023, in the morning, PINA sent a text message from the PINA Phone 8258 to CW-1, "Lmk". Investigators know that "Lmk" is an abbreviation for "Let me know." CW-1 sent a text message to PINA explaining that s/he would meet PINA later in the day. PINA replied, "Ready when u are".

13. That afternoon, CW-1 FaceTime called PINA. PINA and CW-1 coordinated a meetup at an agreed upon location.

14. Investigators met with CW-1 in preparation for the controlled purchase. Investigators observed and photographed CW-1's call log and text messages and confirmed the contact with PINA was over the PINA Phone 8258. Investigators searched CW-1 and CW-1's vehicle for money and contraband with negative results. Investigators provided CW-1 with a transmitter, an audio/video recording device, $7,000 in Official Agency Funds, and instructed CW-

1 to make a controlled purchase of drugs from PINA. Investigators maintained surveillance of CW-1 as CW-1 traveled to the agreed upon location in southeastern Massachusetts for the controlled purchase.

15. Surveillance observed a gray 2022 Jeep Wagoneer, Massachusetts registration 1RBZ47, arrive at the agreed upon meeting location and park. Investigators next overheard, via the transmitter, CW-1 receive a FaceTime call. Investigators later debriefed CW-1, and CW-1 confirmed that PINA called CW-1 from the PINA Phone 8258. During the call, PINA told CW-1 that he was at their agreed upon meeting location.

16. Minutes after seeing the Wagoneer's arrival, surveillance saw CW-1 arrive at the agreed upon meeting location. Surveillance observed CW-1 park behind the Wagoneer and walk to and enter it. Investigators overheard, via the transmitter, PINA conduct the drug transaction with CW-1. After the transaction, surveillance watched CW-1 walk away from PINA's vehicle and return to CW-1's vehicle. Surveillance saw the Wagoneer leave the area.

17. Investigators surveilled CW-1 as he/she left the meeting location, and then met with CW-1 at a predetermined location for a debriefing. At this point, CW-1 provided law enforcement officers with a cardboard box containing one white plastic bag containing a large amount of orange pills. The orange pills tested positive for the presumptive presence of methamphetamine and weighed approximately 2,611 grams (including the white plastic bag). Investigators then searched CW-1 and his/her vehicle again, with negative results. During the debriefing, CW-1 told agents that CW-1 got into the rear passenger side seat of PINA's vehicle and met with PINA, who was driving the vehicle. CW-1 told agents that there was a female, not known to CW-1, in the front passenger seat of the vehicle. CW-1 told agents that CW-1 handed PINA the Official Agency Funds. PINA told CW-1 that the drugs were in the box. CW-1 saw the cardboard box on the seat

next to CW-1. CW-1 picked up the box, exited PINA's vehicle, and returned to his/her vehicle. Agents subsequently sent the suspected methamphetamine pills to the DEA Laboratory for further testing.

18. Investigators reviewed the audio/video recording following the controlled purchase. During the recording, investigators observed PINA in the driver's seat of PINA's vehicle during the meeting with CW-1. Investigators, familiar with PINA from the investigation, including through physical surveillance, review of social media photos of PINA, and a review of PINA's driver's license photo, identified PINA in the recording as the individual interacting with CW-1.



*Screenshots of PINA During Video Recording of January 25, 2023 Buy with CW-1*

## **CONCLUSION**

19. Based on all of the foregoing, there is probable cause to believe that Giovanna PINA has possessed with intent to distribute and distributed controlled substances, namely, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in the Brockton area and elsewhere, in the District of Massachusetts, on or about January 25, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).

Sworn to under the pains and penalties of perjury,

/s/ Timothy R. Kenny
_____
Timothy R. Kenny
Special Agent
Federal Bureau of Investigation

Electronically sworn to and subscribed telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on February ____, 2023.   February 27, 2023

_____
HONORABLE M. PAGE KELLEY
UNITED STATES CHIEF MAGISTRATE JUDGE

8